UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMBER FERGUSON

     Plaintiff,

vs.                               Case No. 6:19-cv-1264-ORL-37LRH

WAYNE IVEY, in his official capacity
as Sheriff of Brevard County, Florida

     Defendant.

_____/

### DEFENDANT'S CASE DISPOSITIVE MOTION FOR SUMMARY JUDGMENT SUPPORTING MEMORANDUM OF LAW

Defendant WAYNE IVEY, in his official capacity as Sheriff of Brevard County, Florida ("BCSO"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby submits its Case Dispositive Motion for Summary Judgment and Supporting Memorandum of Law, seeking final summary judgment as to the claims set forth in the Third Amended Complaint ("TAC") filed by Plaintiff AMBER FERGUSON ("Ferguson"). (Doc. 36).

## I.    INTRODUCTION

BCSO seeks final summary judgment on the three (3) remaining causes of action set forth in the TAC: (Count I) pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act of 1978 ("PDA"); (Count II) retaliation in violation of Title VII and the PDA; and (Count V) interference in violation of the Americans with Disabilities Act of 1990

1

("ADA").[1] Broadly stated, Ferguson never suffered discrimination based on her pregnancy nor was she retaliated against. BCSO assigned Ferguson to full duty not because of Ferguson's pregnancy, but because she provided multiple doctor's notes indicating that she had no restrictions and because she repeatedly told BCSO that she did not need to be placed on light duty. Further, BCSO terminated Ferguson not because of her pregnancy or in retaliation for engaging in protected activity, but because Ferguson could not return to work following exhaustion of her leave under the Family and Medical Leave Act ("FMLA") and more than two months of discretionary administrative leave.

Summary judgment is warranted on Ferguson's pregnancy discrimination claim because there is no evidence in the record to establish that Ferguson's *pregnancy* precipitated any adverse employment action taken by BCSO. Summary judgment is warranted on Ferguson's retaliation claim because Ferguson cannot establish causation or pretext. Lastly, summary judgment is warranted on Ferguson's ADA interference claim because Ferguson failed to exhaust her administrative remedy, Ferguson is not a qualified individual with a disability, and Ferguson did not engage in any protected activity.

---

[1] The Court dismissed Counts III and IV upon Defendant's Motion to Dismiss by Order dated March 26, 2020. (Doc. 43).

2

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Background

BCSO is a law enforcement agency located in Brevard County, Florida. Sheriff Wayne Ivey assumed office in January 2013 and continues to serve as Sheriff. (Ex. 1). In addition to law enforcement services, BCSO operates the Brevard County Jail Complex ("Jail"), which is an accredited corrections facility. (Ex. 1). Ferguson began working for BCSO in the Jail in 2005 as a corrections technician. (Ex. 2). She was promoted to corrections deputy in 2009. (Ex. 3). Ferguson's primary job function as a corrections deputy was the care, custody, and control of inmates. (Ex. 4, 14:5-14:8; Ex. 5). Corrections deputies are required to wear a uniform, which includes a duty belt and various equipment, including handcuffs, radio holder, first aid pouch, radio, and chemical agent (mace), some of which was used every day. (Ex. 4, 14:11-17:4; Ex. 6).

### B.  Operative Policies and Collective Bargaining Agreements

As a corrections deputy, Ferguson was subject to various agency policies, as well as a series of collective bargaining agreements ("CBA") between BCSO and the Coastal Florida Police Benevolent Association ("PBA"). (Ex. 1). The 2009 CBA did not address light duty assignments specifically for pregnant employees, and limited the duration of light duty for any non-work related conditions to 60 days. (Ex. 7 at p. 76). However, the 2012-2013 CBA, signed on February 27, 2012, contained a new provision specifically addressing light duty for pregnant employees and expanding the availability of light duty for the duration of the pregnancy:

SPDN-868764429-2846025

> A pregnant unit member whose physician certifies that she should not continue working in the field shall be placed in a light duty position with no loss in pay, provided a position is available for placement. The pregnant unit member will be permitted to be on light duty for the duration of the pregnancy.

(Ex. 8 at DEF000684). BCSO Policy/Procedure 300.06D(M) mirrors this language. (Ex. 9 at DEF000587).[2]

## C. Ferguson's Assignments During Pregnancy

In March 2013, Ferguson informed BCSO that she was pregnant by providing a note from her physician which indicated that "at this point in her pregnancy she has no restrictions." (Ex. 4, 18:4-18:10; Ex. 10). Ferguson's sergeant subsequently assigned Ferguson to the control room in the Jail, which was generally reserved for civilians and light duty assignments, from March 16 through May 10. (Ex. 11).

While assigned to the control room, Ferguson notified Sgt. Brian Seeley that she was uncomfortable in the corrections deputy uniform and requested to wear civilian clothes without a utility belt and equipment. (Ex. 4, 20:15-20:17; Ex. 12). Sgt. Seeley e-mailed Lt. Ronald Tomblin to ask for guidance. (Ex. 12). Lt. Tomblin was not aware that Ferguson was pregnant, and he advised Sgt. Seeley that Ferguson needed to provide a letter from her doctor indicating work restrictions in accordance with agency policy and the 2012-2013 CBA in order to be assigned to light duty. (Ex. 13). Sgt. Seeley relayed this information to Ferguson and transferred her to a full duty assignment pending medical documentation of her restrictions. (Ex. 13). Meanwhile,

---

[2] Light duty for reasons other than pregnancy remains limited to 60 days pursuant to BCSO Policy/Procedure 300.06D(M) and the CBA. (Ex. 8 at DEF 000684; Ex. 9).

4

Ferguson was permitted to wear a larger uniform and was assigned to the Infirmary where she had less contact with inmates. (Ex. 4, 65:15-65:17; Ex. 11; Ex. 13).

While she was assigned to full duty, Ferguson sent a series of e-mails inquiring about light duty. (Ex. 14). In response to Ferguson's inquiries, Sgt. Seeley explained what the physician's letter needed to state, and Human Resources Officer Tracy Jeffreys answered Ferguson's questions regarding light duty assignments. (Ex. 14). Meanwhile, Ferguson repeatedly told her supervisors that she was not asking for light duty. (Doc. 36 at ¶¶ 46-47, 63, 84-85, 90-91, 93; Ex. 4, 26:25-27:2, 30:8-30:9, 37:20-37:21, 47:10-47:13).[3] Sgt. Seeley clearly advised Ferguson that unless she provided a physician's letter documenting work restrictions, she would be required to work full duty and wear the corrections deputy uniform. (Ex. 14).

On May 24, Ferguson met with Corrections Chief Mike Lewis and Major Darrell Hibbs. (Ex. 1; Ex. 4, 49:19-49:23). During this meeting, Ferguson stated that she wanted limited contact with inmates and that she was uncomfortable working around inmates. (Ex. 1). Chief Lewis therefore offered to assign Ferguson to a receptionist position at a different location. (Ex. 1). Later, they discussed transferring Ferguson to the Property Division on the night shift, where she would have had almost

---

[3] It remains undisputed that Ferguson did not have any restrictions requiring light duty, as she repeatedly testified during her deposition:
- "I had no medical complications to render light duty." (Ex. 4, 27:1-27:2).
- "I didn't have any restrictions, I was pregnant. I had no medical complications rendering a restriction." (Ex. 4, 30:8-30:9).
- "I didn't have any restrictions to bring in a note." (Ex. 4, 37:20-37:21).
- "They were trying to demand a note stating that I had restriction. I didn't have restrictions. I could work full duty. I could work my position." (Ex. 4, 47:10-47:13).

5

no contact with inmates, but Ferguson's husband was a supervisor on the night shift, and BCSO prohibits spouses from reporting to one another. (Ex. 1; Ex. 4, 50:15-50:17). Ferguson was not transferred to the night shift because her husband refused to change his shift and threatened legal action if forced to do so. (Ex. 1; Ex. 4, 50:21-51:5). Chief Lewis therefore withdrew the night shift offer and assigned Ferguson to the receptionist position. (Ex. 1; Ex. 15).

On May 28, Jeffreys spoke with Ferguson to explain that the CBA and BCSO policy required her to provide a doctor's note indicating her restrictions in order to be assigned to the light duty receptionist position. (Ex. 1; Ex. 16). Ferguson responded that she was not light duty and did not ask to be moved. (Ex. 1; Ex. 16). Jeffreys reported the conversation to Chief Lewis. (Ex. 1; Ex. 16).

The next day on May 29, Chief Lewis, Major Hibbs, and Human Resources Manager Lisa Gillis met with Ferguson to clarify Ferguson's circumstances. (Ex. 1). Chief Lewis explained that Ferguson had two options: if she was full duty with no restrictions, Ferguson would be required to return to her regular assignment; or if Ferguson wanted an accommodation, the Sheriff's Office would assign her to a light duty position if Ferguson provided medical documentation of her work restrictions. (Ex. 1). Ferguson repeatedly stated during this meeting that although she was pregnant, she was full duty and did not need a light duty assignment. (Doc. 36 at ¶¶ 83-85; Ex. 1). Accordingly, Chief Lewis assigned Ferguson back to a full duty position at the Jail. (Doc. 36 at ¶¶ 86-98; Ex. 1). The only reason that Chief Lewis assigned

6

Ferguson to work in her full duty position at the Jail was Ferguson's insistence that she was full duty with no restrictions. (Ex. 1).

Later that day, Ferguson was admitted to the emergency room for reasons related to her pregnancy, but on May 31, Ferguson returned to work with a note from her physician verifying that Ferguson could "return to full duty with no restrictions for her current job." (Doc. 36 at ¶ 99; Ex.4, 18:13-18:18; Ex. 17). Accordingly, on June 3, Ferguson was assigned to full duty, initially in the infirmary but later to various inmate dorms, through July 1. (Ex. 11). Ferguson did not provide any subsequent physician notes. (Ex. 4, 18:19-18:24; Ex. 11).

### D. Ferguson's Leave Extensions and Termination

On July 2, Ferguson was placed on bedrest due to her pregnancy. (Doc. 36 at ¶ 111). BCSO placed her on FMLA leave, and Ferguson received leave donations from her co-workers. (Ex. 18). On August 16, Ferguson requested a leave extension because she remained pregnant and on bedrest, and her FMLA leave was set to expire on September 30. (Ex. 19). BCSO granted her 30 additional days of administrative leave through October 30. (Ex. 19).

Ferguson's child was born premature on August 24, and Ferguson remained on leave. (Doc. 36 at ¶ 118). On October 7, Ferguson requested a second leave extension, this time to provide care for her newborn. (Ex. 20). BCSO granted her 30 additional days of administrative leave through November 30. (Ex. 20).

On November 19, Ferguson submitted a request for a third leave extension so that she could "continue to be there for [her] child." (Ex. 21). Attached to Ferguson's

SPDN-868764429-2846025

request was correspondence from a social worker dated November 16 requesting that BCSO grant Ferguson an unspecified amount of additional time off to care for her newborn. (Ex. 21). She also asked BCSO to give her an additional year of leave without pay to care for her son and his medical needs, which would have amounted to more than 17 months of total leave, including Ferguson's FMLA leave and subsequent extensions. (Ex. 21). BCSO granted Ferguson a brief extension of leave to consider her request, but ultimately denied any further discretionary leave. (Ex. 22). The denial complied with BCSO Policy/Procedure 300.06G, which provides that although the Sheriff has discretion to grant leave without pay for injury or illness, "under no circumstances will [leave] be authorized for a period of more than one year." (Ex. 4, 59:15-60:3; Ex. 23). Ferguson did not request a shorter leave of absence at any time.

BCSO advised Ferguson by phone on December 2 and by hand-delivered letter[4] on December 4 that her leave request was denied and directed her to return to work on December 6. (Ex. 22). Ferguson did not respond to the letter or call to advise BCSO that she would not be returning to work (Ex. 24). Ferguson did not return to work on December 6 or at any time thereafter. (Ex. 24). Ferguson was terminated effective December 6, 2013, based on her failure to report to duty after exhaustion of her FMLA leave and subsequent extensions. (Ex. 24).

---

[4] BCSO had a standard practice of hand-delivering notices of this nature, and in this case Jeffries and Corporal Leon Maddox hand-delivered Ferguson's letter at the Ronald McDonald House where Ferguson was living while her son was admitted to the hospital. After receiving the letter, Ferguson invited Jeffries and Cpl. Maddox up to the hospital room to meet Ferguson's son. (Ex. 16).

SPDN-868764429-2846025

### E. Ferguson's Protected Activity

BCSO received a Notice of Charge of Discrimination ("Initial Notice") from the U.S. Equal Employment Opportunity Commission ("EEOC") on June 11, 2013, eight (8) days after Ferguson had already been assigned back to full duty. (Ex. 25). Ferguson's Charge of Discrimination ("Charge") was not attached to the Initial Notice. (Ex. 25). On June 21, BCSO received a second Notice of Charge of Discrimination, along with Ferguson's Charge which was dated June 12, 2013. (Ex. 26). Ferguson amended her Charge in February and June 2014 to include allegations that she and her husband were subjected to retaliation following the filing of the initial charge and that she was denied accommodations in violation of the ADA. (Ex. 27; Ex. 28). Neither amended Charge contained any allegation that BCSO interfered with Ferguson's ADA rights. (Ex. 27; Ex. 28).

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party satisfies its initial burden to meet this standard, the burden shifts back to the nonmoving party, which must demonstrate a jury could reasonably find in its favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment

SPDN-868764429-2846025

as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## IV.   ARGUMENT

### A. Ferguson Cannot Establish a *Prima Facie* Case of Pregnancy Discrimination under Title VII or the PDA

Summary judgment should be granted as to Count I of the TAC because Ferguson cannot establish a *prima facie* case of pregnancy discrimination. The PDA amended Title VII to prohibit sex discrimination based on pregnancy, childbirth, and related medical conditions. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312 (11th Cir. 1994). "The analysis for a pregnancy discrimination claim is the same as for a Title VII sex discrimination claim." *Id.* at 1312-13.

As Ferguson does not present any direct evidence of discrimination, the Court must analyze Ferguson's claims under Title VII and the PDA based on circumstantial evidence using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Young v. United Parcel Servs., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1353-54 (2015); *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012). Under this framework, Ferguson has the initial burden to establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Id.* at 1055. If Ferguson establishes a *prima facie* case, the burden shifts to BCSO to articulate a legitimate reason for the employment action. *Id.* BCSO must clearly set forth the reasons for its actions but need not persuade the Court that it was actually motivated by the proffered reasons. *Id.* (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087

10

(11th Cir. 2004); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). Once BCSO identifies a legitimate, nondiscriminatory reason, the burden shifts back to Ferguson "to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* (citing *Burdine*, 450 U.S. at 256).

To establish a *prima facie* case of pregnancy discrimination, Ferguson "must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees *outside her protected class* more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (emphasis supplied).

      1.  <u>Ferguson was assigned to full duty because she had no work restrictions, not because she was pregnant.</u>

Ferguson first claims that she was discriminated against when BCSO refused to allow her to work in a modified duty position in a control room, refused to allow her to wear maternity clothing in lieu of the corrections deputy uniform, and required her to submit a doctor's note requesting "light duty." (Doc. 36 at ¶¶ 135, 144). To be clear, the Court has already dismissed Ferguson's ADA discrimination claims because pregnancy is not a disability under the ADA unless the employee has a pregnancy-related impairment that substantially limits a major life activity, and Ferguson did not have any such impairment during the time period when she sought to work in the control room. (*See* Doc. 43 at p. 8-9); *see also Selkow v. 7-Eleven, Inc.*, No. 8:11-cv-456-T-33EAJ, 2012 WL 2054872, at *14 (M.D. Fla. June 7, 2012) (holding that pregnancy itself is not a disability); *see also Jeudy v. Att'y Gen., Dep't of Justice*, 482 F. App'x 517,

SPDN-868764429-2846025

521 (11th Cir. 2012) (holding that "a pregnancy-related impairment may be considered a disability, if it substantially limits a major life activity").

Accordingly, the question is not whether Ferguson was entitled to an ADA accommodation—it is the law of the case that she was not—but rather whether Ferguson's work assignment during her pregnancy constitutes an adverse employment action. The Eleventh Circuit defines an adverse employment action as a "*serious and material* change in the terms, conditions, or privileges of employment . . . viewed by a reasonable person in the circumstances." *Holland*, 677 F.3d at 1057 (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

The denial of Ferguson's request to transfer to the control room and her assignment to full duty are not serious and material because these actions did not change any terms of Ferguson's employment. *See Jeudy*, 482 F. App'x at 521. In *Jeudy*, a pregnant corrections officer alleged that she suffered adverse action when her employer denied her request to accommodate her pregnancy by allowing her to work a different shift. The *Jeudy* court held that "no reasonable person would view the defendant's unwillingness to change Jeudy's shift as a serious and material change in her employment where here Jeudy has not shown that her pregnancy-related complications constitute a disability." *Id.* (citing *Swain v. Hillsborough Cty. Sch. Bd.*, 146 F.3d 855, 858 (11th Cir. 1998)). Here, no reasonable person would view BCSO's unwillingness to assign Ferguson to the control room as a serious and material change in her employment because (1) Ferguson has not shown that she had *any* pregnancy-

12

related complications that constitute a disability; and (2) even if Ferguson had been disabled, she nevertheless rejected two alternative assignments. *See Swain*, 146 F.3d at 858 (holding that employers have no duty to accommodate if the employee is not disabled under the ADA); *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997) (holding that a qualified individual with a disability is not entitled to her preferred accommodation or the accommodation of her choice).

Likewise, the requirement that Ferguson wear her uniform, which included her duty belt, was not a serious and material change. It is undisputed that Ferguson did not have any work restrictions; that it was a job requirement for corrections deputies to wear a uniform, which included a duty belt and equipment; that corrections deputies were required to carry equipment such as handcuffs, mace, and first aid kits for safety reasons; and that while BCSO permitted Ferguson to wear larger uniform sizes during her pregnancy, she was required to wear her duty belt and carry her equipment because she used it on a daily basis. (Ex. 4, 14:11-17:4). No reasonable person could view it as materially adverse to require a full duty corrections deputy to wear the corrections deputy uniform and carry equipment necessary for officer safety. *See Edwards v. Ambien Healthcare of Ga., Inc.*, 674 F. App'x 926, 930 (11th Cir. 2017) (holding that the plaintiff's allegation that her employer made her existing job duties more difficult was insufficient to allege an actionable adverse employment action); *see also Cobb v. City of Roswell*, No. 1:11-CV-446-AT, 2012 WL 12887544, at *11 (N.D. Ga. Sept. 28, 2012) (rejecting argument that requirement for employee to wear a uniform amounted to an

SPDN-868764429-2846025

adverse employment action), *aff'd sub nom. Cobb v. City of Roswell, Ga. ex rel. Wood,* 533 F. App'x 888 (11th Cir. 2013).

Further, "requiring" Ferguson to submit a light duty note does not amount to adverse employment action because it was not a change in terms and conditions of employment. Rather, it is undisputed that for the entirety of Ferguson's pregnancy in 2013, the CBA and BCSO policy required that all employees must submit medical clearance by a treating physician prior to the beginning of a light duty assignment (Ex. 8; Ex. 9) and that pregnant employees were also specifically required to submit a light duty note. (Ex. 8; Ex. 9).

The policy for pregnant employees was implemented when the CBA was signed in February 2012, more than a year before Ferguson's pregnancy. (Ex. 8). Thus, if Ferguson wanted to work in a "modified duty" position and not wear the corrections deputy uniform, she was required to submit a light duty note from her doctor under existing BCSO policy. (Ex. 8; Ex. 9). No reasonable person could view the enforcement of an existing policy in this manner as a serious and material change.

In any case, Ferguson was assigned duties that were consistent with her lack of medical restrictions, and therefore, she cannot state a claim under Title VII for not receiving her preferred alternative duty assignment. *See Pennington v. City of Huntsville, Ala.*, 93 F. Supp. 2d 1201, 1215 (N.D. Ala. 2000) (concluding that plaintiff's failure to be assigned to his preferred location was not adverse employment action), *aff'd sub nom. Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001); *Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1264 (N.D. Fla. 2016) (same); *Batley v. Bishop State Cmty. Coll.*,

SPDN-868764429-2846025

No. CV 17-0112-CG-MU, 2017 WL 4019453, at *9 (S.D. Ala. Aug. 14, 2017), (concluding that plaintiff failed to allege adverse employment action when he was not given his preferred schedule), *report and recommendation adopted by* 2017 WL 4019435 (S.D. Ala. Sept. 12, 2017).

Turning to the fourth element of Ferguson's *prima facie* case, Ferguson's allegation that she was treated "less favorably than [BCSO] treated other pregnant corrections deputies" likewise fails. Any proffered comparators must be "similarly situated in all material respects." *See Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (holding that "a plaintiff asserting an intentional-discrimination claim under *McDonnell Douglas* must demonstrate that she and her proffered comparators were 'similarly situated in all material respects'"). "A comparison with other pregnant employees in most instances will not give rise to an inference of discrimination on the basis of pregnancy." *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 438 (8th Cir. 1998). To proceed on this theory, Ferguson would need to show that BCSO treated her less favorably than a similarly restricted pregnant employee who was subject to the CBA and BCSO policies that were in effect after January 2013.[5] *Id.* Ferguson cannot make this showing as a matter of law, however, because *she did not have any pregnancy*

---

[5] Ferguson cannot rely on any pregnant employees who were granted light duty without a doctor's note prior to February 2012 when the 2012-2013 CBA went into effect because the light duty policy for pregnant employees was modified by the CBA. (Ex. 8). Similarly, she cannot refer to any employees who were treated more favorably prior to January 2013 when Sheriff Ivey assumed office and installed new command staff at the Jail. (Ex. 1). *See Lewis*, 918 F.3d at 1227–28 (stating that a similarly situated comparator ordinarily "will have been subject to the same employment policy, guideline, or rule as the plaintiff" and "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff").

SPDN-868764429-2846025

*restrictions*. Instead, Ferguson's theory is apparently that she was treated less favorably than other pregnant employees who had work restrictions and were assigned according to those restrictions because she was pregnant and did not have any restrictions. This is completely illogical. By comparing herself to other pregnant employees, Ferguson concedes that the reason she was not assigned to modified duty was something other than the fact that Ferguson was pregnant, namely the fact that she did not have any work restrictions.

Even if Ferguson could establish a *prima facie* case, summary judgment is warranted because Ferguson cannot establish pretext. BCSO has an "'exceedingly light burden' in setting forth legitimate, nondiscriminatory reasons" for taking the challenged employment action. *Bush v. Barnett Bank of Pinellas Cty.*, 916 F. Supp. 1244, 1253 (M.D. Fla. 1996) (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)). An employer's proffered reason is legitimate if it is honest and reasonably held. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

Here, BCSO policy required Ferguson to work full duty and to wear the corrections deputy uniform because she did not have a light duty note or any work restrictions, and there is no evidence that this reasoning was false or pretextual. It is well-established in the Eleventh Circuit that the Court does not sit "as a super-personnel department that re-examines an entity's business decision." *Alphin v. Sears-Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991); *see also Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("[I]t is not our rule to second-guess the wisdom of an employer's

16

business decisions . . . as long as those decisions were not made with a discriminatory motive."). Thus, employers may take employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis*, 918 F.3d 1213. Here, there is no evidence that Ferguson was assigned to full duty *because* she was pregnant. Rather, she was assigned to work full duty because she had no medical restrictions and repeatedly told BCSO that she did not need light duty. As there is no evidence in the record that these reasons were false or discriminatory, summary judgment should be entered in favor of BCSO as to Ferguson's pregnancy discrimination claim. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.").

2. <u>Ferguson was terminated because she exhausted her leave and did not return to work, not because she was pregnant.</u>

Ferguson also claims that she suffered discrimination when she was terminated in December 2013. (Doc. 36 at ¶¶ 135, 144). This claim should also be summarily dismissed because there is no question that Ferguson's termination was completely unrelated to her pregnancy.

First, there is no evidence that Ferguson was treated less favorably than other employees outside her protected class because Ferguson was treated consistent with BCSO Policy and practice. The following facts are not disputed:

- Ferguson exhausted her FMLA leave;

- Ferguson was granted more than two months of leave without pay pursuant to BCSO Policy 300.06G;

- Ferguson's request for a one year leave of absence beyond the five (5) months she already received was denied in accordance with BCSO Policy 300.06G(C);

- Ferguson was ordered to return to work after her request was denied;

- Ferguson did not return to work or communicate her reasons for not returning to work; and

- Ferguson was terminated because she did not return to work.

If BCSO had granted Ferguson's request for an additional one year leave of absence, Ferguson's leave would have totaled more than 17 months, which would have been in violation of BCSO Policy/Procedure 300.06G. Thus, the denial of Ferguson's request and Ferguson's termination were not only consistent with BCSO policy, but also consistent with BCSO practice of terminating employees who exhaust all available leave and are unable to return to work. In fact, two non-pregnant employees were terminated for the same reason in the six (6) months preceding Ferguson's termination. (Ex. 29).

Finally, there is no evidence that Ferguson's termination was pretextual. The decision to terminate Ferguson after she exhausted all available leave and remained unable to return to work for over a year was warranted and legitimate, and there is no evidence that it had anything to do with Ferguson's pregnancy. In fact, Ferguson's request for a one year leave of absence was not even related to her pregnancy or childbirth. Rather, understandably, she wanted to stay home and care for her child.

SPDN-868764429-2846025

Thus, even if BCSO had discretion to grant Ferguson's request, which was not the case according to agency policy prohibiting administrative leave of more than one year, the question facing BCSO was whether to grant discretionary leave for the care of a child and not for a pregnancy or pregnancy related condition. Again, BCSO was permitted to act for any reason, good or bad, as long as its reason was not discriminatory or retaliatory. *See Nix*, *supra*. Ferguson's dissatisfaction with the decision not to grant her discretionary leave to care for her child is not sufficient to survive summary judgment.

## B.  Ferguson Cannot Establish a *Prima Facie* Case of Retaliation under Title VII or the PDA

Summary judgment should also be granted as to Count II of the TAC because Ferguson cannot establish a *prima facie* case of retaliation under Title VII or the PDA. Ferguson's PDA retaliation claim is analyzed under the same framework as her Title VII retaliation claim. *See Crosby v. Gregory*, No. CV 212-140, 2014 WL 4460501, at *13 n.14 (S.D. Ga. Sept. 10, 2014) (stating that the Title VII retaliation framework applies to a PDA retaliation claim). To establish a *prima facie* case of retaliation under the *McDonnell Douglas* framework, Ferguson must show (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford*, 529 F.3d at 970. Further, "Title VII retaliation claims must be proved according to the traditional principles of 'but for' causation . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged

SPDN-868764429-2846025

wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

None of the actions taken by BCSO were retaliatory under this standard. While the filing of an EEOC charge is considered to constitute protected activity, BCSO was not even aware that Ferguson filed her Charge until June 11, 2013, which was *after* Ferguson requested a transfer to the control room and an alternate uniform and *after* Ferguson was assigned to full duty in accordance with her doctor's note. (Ex. 25). Thus, Ferguson's Charge could not have been a "but for" reason for her assignment to full duty.

Further, there is no causal connection between Ferguson's protected activity in filing her Charge in June and her termination in December. In the absence of other evidence of causation, temporal proximity between protected activity and adverse action must be *very* close in order to establish a causal connection. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)). A three-to-four-month disparity is insufficient to show causal connection. *Id.* Here, Ferguson was terminated six (6) months after BCSO received notice of Ferguson's Charge. In the interim, Ferguson actively worked in the Jail without incident and later received two months of discretionary leave. These events, as well as Ferguson's failure to report to work when she was directed to, sufficiently sever any causal connection between Ferguson's protected activity and her termination. *See DeLeon v. ST Mobile Aerospace Eng'g, Inc.*, 684 F. Supp. 2d 1301, 1325–26 (S.D. Ala. 2010) (holding that the plaintiffs' failing to report for work when scheduled "severed

the causal connection" of only a few hours between their protected activity and their termination). Coupled with the lack of any other evidence of causation, Ferguson is unable to establish a *prima facie* case of retaliation.

Finally, there is no evidence that Ferguson's work assignment and termination were pretext for unlawful retaliation for the same reasons set forth above in Sections (IV)(A)(1) and (2). There is no evidence that the legitimate, non-retaliatory reasons proffered by BCSO—that an employee with no restrictions was required to work full duty and that agency policy prohibited administrative leave in excess of one year— were false or that the real reason Ferguson was assigned to full duty or terminated was because she engaged in protected activity. Accordingly, summary judgment should be granted in favor of BCSO on Count II.

### C. Ferguson cannot establish a claim for ADA Interference

Summary judgment should be granted as to Count V of the TAC because Ferguson failed to exhaust her administrative remedies regarding this claim and because Ferguson cannot establish a *prima facie* case of ADA interference.

1. <u>Ferguson failed to exhaust her administrative remedy regarding her ADA interference claim.</u>

Ferguson's ADA interference claim should be dismissed because it raises discrete allegations of wrongdoing that were not previously addressed during the administrative phase of this proceeding. Prior to bringing a civil action based on an alleged violation of the ADA, Ferguson was required to file a charge of discrimination with the EEOC. *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (citing

SPDN-868764429-2846025

*Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001)). Thereafter, her lawsuit was limited "by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). "Courts will allow judicial claims that amplify, clarify, or more clearly focus the EEOC complaint allegations, but allegations of new actions of discrimination are inappropriate for a post-charge judicial complaint." *See EEOC v. STME, LLC*, 309 F. Supp. 3d 1207, 1211 (M.D. Fla. 2018) (quoting *Gregory*, 355 F.3d at 1280) (quotations omitted), *affirmed* 938 F.3d 1305 (11th Cir. 2019).

Here, Ferguson's initial Charge contained no reference to the ADA whatsoever, and her amended Charge included a single reference to the ADA:

> I believe I was discriminated against by being denied a reasonable accommodation in violation of the Americans with Disabilities Act (ADA) of 1990, as amended.

(Ex. 26; Ex. 27; Ex. 28). There is no reference to an ADA interference claim, nor any allegation that Ferguson's termination was the result of interference. *See STME*, 309 F. Supp. 3d at 1215–16 (holding that plaintiff's request to amend the complaint to add a claim for unlawful interference would be futile because there was no hint of an ADA interference claim in the EEOC charge); *see also Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840-41 (11th Cir. 2005) (affirming summary judgment to the defendant on hostile work environment claim because the allegations in the charge of discrimination were limited to plaintiff's termination and none related to a hostile work environment claim). Ferguson's ADA interference claim could not reasonably have been expected

SPDN-868764429-2846025

to grow out of the initial or amended Charges, and the interference claim does not amplify, clarify, or focus any other allegations. Ferguson therefore failed to exhaust her administrative remedy regarding her ADA interference claim.

   2.   <u>Ferguson cannot establish a *prima facie* case of ADA interference because she is not disabled.</u>

Although the Eleventh Circuit has not announced the standard for evaluating an ADA interference claim, it is clear that any such claim is not legally sufficient unless the plaintiff is disabled. *See Atchinson v. Bd. of Regents of Univ. Sys. of Ga.*, 802 F. App'x 495, 508 (11th Cir. 2020) (stating that "we have not yet had occasion to explain the proper standard for evaluating an ADA anti-interference claim"); *see also STME*, 309 F. Supp. 3d at 1207 (holding that plaintiff had no existing rights under the ADA because she was not disabled). Because the Court has already determined that Plaintiff is not disabled as defined by the ADA (*see* Doc. 43 at p. 8-9), Ferguson had no rights under the ADA, and it is impossible for BCSO to have interfered with Ferguson's rights under the ADA. Accordingly, Ferguson's ADA interference claim fails as a matter of law, and summary judgment as to Count V should be entered in favor of BCSO.

## V.   <u>CONCLUSION</u>

Summary judgment is appropriate because (1) Ferguson cannot establish that she was denied an assignment because of her pregnancy or in retaliation for engaging in protected activity; (2) Ferguson cannot establish that she was terminated because of her pregnancy or in retaliation for engaging in protected activity; (3) Ferguson cannot

SPDN-868764429-2846025

establish that any action taken by BCSO was pretext for unlawful discrimination or retaliation; and (4) Ferguson's ADA interference claim fails as a matter of law because Ferguson failed to exhaust her administrative remedy and she is not disabled.

January 29, 2021                          Respectfully submitted,

                                          */s/ Susan Potter Norton*
                                          Susan Potter Norton
                                          Florida Bar No. 0201847
                                          Marc A. Sugerman, Esq.
                                          Florida Bar No. 0081876
                                          ALLEN, NORTON & BLUE, P.A.
                                          1477 W. Fairbanks Ave., Suite 100
                                          Winter Park, FL 32789
                                          (407) 571-2152
                                          (407) 571-1496 (fax)
                                          snorton@anblaw.com
                                          msugerman@anblaw.com
                                          tsuarez@anblaw.com

SPDN-868764429-2846025

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 29, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to:

> Jill S. Schwartz
> David H. Spalter
> JILL S. SCHWARTZ & ASSOCIATES, P.A.
> 655 West Morse Blvd., Ste. 212
> Winter Park, Florida 32789
> jschwartz@schwartzlawfirm.net
> dspalter@schwartzlawfirm.net
> jtacktill@schwartzlawfirm.net
> docketing@schwartzlawfirm.net

> */s/ Susan Potter Norton*
> Attorney