UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMBER FERGUSON,

     Plaintiff,

v.                             Case No. 6:19-cv-1264-RBD-LRH

WAYNE IVEY,

     Defendant.

_____

## ORDER

Before the Court are:

1.    Defendant's Case Dispositive Motion for Summary Judgment (Doc. 50 ("Motion"));

2.    Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 51); and

3.    Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 52).

On review, Defendant's Motion is due to be granted.

## BACKGROUND

From 2009 until her termination in 2013, Plaintiff worked as a corrections deputy in the Brevard County Jail for Defendant Wayne Ivey, in his capacity as Sheriff of Brevard County. (Docs. 50-3, 51-10.)

In March 2013, Plaintiff told Defendant she was pregnant and due in October. (Doc. 50-10; Doc. 51-1, ¶ 2.) She provided a note from her doctor stating she had no work restrictions. (Doc. 50-10; Doc. 51-1, ¶ 2.) At that time, Plaintiff asked to be assigned to the control room of the jail, which had no contact with inmates. (Doc. 51-1, ¶¶ 3–4.)

The control room is not a full-time position for a normal duty corrections deputy. (Doc. 51-2, pp. 17:24–18:10, 19:6–11, 21:17–18.) The primary function of corrections deputies is to manage the inmates. (Doc. 50-4, pp. 14:5–8, 16:16–23.) While deputies may be sporadically assigned to the control room if the jail is understaffed, the control room is typically staffed by lower-paid corrections technicians. (Doc. 51-2, pp. 17:24–18:10, 21:17–22:1; Doc. 52-1, ¶¶ 4, 5.)

Nevertheless, from March 16 to May 10, 2013, Defendant assigned Plaintiff to the control room at her request. (Doc. 50-11, pp. 1–28.) In May, while assigned to the control room, Plaintiff asked Sergeant Brian Seeley whether she could stop wearing her uniform as her pregnancy progressed. (Doc. 50-12.) Sgt. Seeley emailed Lieutenant Ronald Tomblin to ask. (*Id.*)

Until Sgt. Seeley's email, Lt. Tomblin was unaware Plaintiff was pregnant. (Doc. 50-13, ¶ 4.) Lt. Tomblin asked Sgt. Seeley whether Plaintiff had provided a letter from her doctor with any work restrictions. (*Id.*) Sgt. Seeley responded that Plaintiff's doctor said she did not have any work restrictions, but he had assigned

her to the control room. (*Id.* ¶ 5.) He reminded Sgt. Seeley of the terms of the deputies' new collective bargaining agreement,[1] which permits a pregnant employee to work a light duty assignment with no loss in pay for the duration of her pregnancy—but she must provide a note from her doctor saying she should not continue working in the field. (Doc. 50-8, p. 3; Doc. 50-9, p. 5; Doc. 50-13, ¶ 6.) So Lt. Tomblin told Sgt. Seeley to follow the bargaining agreement and assign Plaintiff to normal duty until her doctor indicated she had restrictions. (Doc. 50-13, ¶ 5.)

Sgt. Seeley then assigned Plaintiff to normal duty in the infirmary, which involved some contact with inmates. (Doc. 50-11, p. 29; *see* Doc. 50-13, ¶ 10.) Plaintiff complained and asked to be transferred back to the control room, telling her supervisors that she did not want to have direct contact with inmates or wear her equipment belt. (Doc. 50-4, pp. 20:15–17, 21:21–23; Doc. 50-13, ¶ 9.) Plaintiff's supervisors told her that if she got a note, they would accommodate her, but if she did not get a note, she would be assigned to normal duty. (Doc. 50-4, p. 46:18–22; Doc. 50-14, p. 2.) But Plaintiff repeatedly told them she did not have restrictions justifying light duty and did not provide a note saying she could not work her normal duties. (Doc. 50-4, pp. 26:25–27:2, 30:6–9, 37:20–21, 43:6–8, 45:24–46:1,

---

[1] Prior to 2012, the bargaining agreement did not specifically address light duty assignments for pregnant employees. (Doc. 50-7, p. 18.)

47:10–13, 48:16–17; Doc. 51-1, ¶¶ 8, 15.) Defendant briefly assigned Plaintiff to a receptionist position with no inmate contact but told her she needed a note to continue there; Plaintiff said she did not have a note and again asked to be assigned to the control room instead, saying she was not light duty. (Doc. 50-1, ¶¶ 10–22; Doc. 50-4, pp. 48:6–50:8; Doc. 50-16, ¶¶ 2–6; Doc. 51-1, ¶ 15.)

After this back-and-forth, on May 27, Plaintiff was briefly hospitalized with pregnancy complications. (Doc. 51-1, ¶ 17.) On May 31, Plaintiff returned to work and provided another doctor's note verifying that she had no restrictions and was able to return to work normal duty. (*Id.* ¶ 18; Doc. 50-17.) So in June, Defendant again assigned Plaintiff to various normal duty positions. (Doc. 50-11, pp. 37–48.)

On June 6, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 50-25.) She filed a second charge on June 17, complaining that Defendant denied her request to be assigned to the control room. (Doc. 50-26.)

Plaintiff then continued to work normal duty for about a month. (Doc. 50-11, pp. 37–48.) On July 2, Plaintiff was again hospitalized due to pregnancy complications, and she went on Family and Medical Leave Act ("FMLA") leave. (Doc. 50-4, p. 56:10–21; Doc. 50-11, pp. 37–48; Doc. 50-19.) On August 16, before the baby was born and with her FMLA leave set to expire, Plaintiff requested discretionary leave, which Defendant granted through October 30. (Doc. 50-19.)

4

On August 24, Plaintiff's child was born premature and placed in the NICU. (Doc. 50-20; Doc. 36, ¶ 118.) On October 7, with her discretionary leave expiring on October 30, Plaintiff requested and was granted additional discretionary leave through November 30 to stay with her child. (Doc. 50-20.)

Then on November 19, with the expiration date of her discretionary leave again looming, Plaintiff asked for another extension—this time for a full additional year of leave. (Doc. 50-21.) But Defendant's leave policy states that "under no circumstances will [leave] be authorized for a period of more than one year." (Doc. 50-23.) As Plaintiff had already used several months of discretionary leave, Defendant denied her request for another year of leave and ordered her to return to work on December 6. (Doc. 50-22.) Plaintiff did not return to work as directed, and Defendant terminated her. (Doc. 50-24.)

So Plaintiff sued, bringing three claims against Defendant that have survived to this point: (1) pregnancy discrimination under Title VII of the Civil Rights Act of 1964 (Count I); (2) retaliation under Title VII (Count II); and (3) interference with her rights under the Americans with Disabilities Act ("ADA") (Count V). (Doc. 36, ¶¶ 132–48, 168–73.)[2] Defendant moved for summary judgment on all three claims. (Doc. 50.) Plaintiff responded, and Defendant

---

[2] The Court dismissed Plaintiffs' other ADA claims in Counts III and IV with prejudice. (Doc. 43.)

replied. (Docs. 51, 52.) So the matter is ripe.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). Then the Court must decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citation and internal quotation marks omitted).

## ANALYSIS

### I.    Pregnancy Discrimination

Defendant first argues Plaintiff has not established her pregnancy discrimination claim. (Doc. 50, pp. 10–21.)

Title VII, as amended by the Pregnancy Discrimination Act, prohibits discrimination on the basis of pregnancy. *See Holland v. Gee*, 677 F.3d 1047, 1054 (11th Cir. 2012) (citing 42 U.S.C. § 2000e). In cases involving circumstantial evidence, such as this one, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]  *See Holland*, 677 F.3d at

---

[3] The Court uses the *McDonnell Douglas* framework here as Plaintiff relies on a single-

1054.

The plaintiff must first establish a prima facie case of discrimination, meaning she must show she was: (1) a member of a protected class; (2) qualified; (3) subjected to an adverse employment action; and (4) treated differently than similarly situated employees outside of her protected class. *Id.* The burden then "shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* (cleaned up). The burden then "shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason." *Id.* (cleaned up).

Two alleged adverse actions are at issue: Defendant's denial of Plaintiff's request to be assigned to the control room and Plaintiff's termination.[4] (Doc. 36, ¶ 135; Doc. 51, pp. 8–10.) The Court applies the burden-shifting framework to each in turn.

## A.    Control Room Request

As to the control room request, Defendant argues that Plaintiff cannot make out her prima facie case because: (1) Defendant's denial of Plaintiff's request was not an adverse employment action; and (2) Plaintiff has not identified a similarly situated comparator. (Doc. 50, pp. 11–16.) The Court agrees on both counts.

---

motive pretext theory (*see* Doc. 51, p. 13), as opposed to a mixed-motive theory. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

[4] Plaintiff abandoned any other potentially adverse actions in her response to the Motion. (*See* Doc. 51, pp. 8–10.)

### 1.      Prima Facie Case – Adverse Employment Action

First, Defendant's denial of Plaintiff's request to be assigned to the control room was not an adverse employment action.

As a general matter, actions are not adverse simply because they make an employee unhappy. *See Edwards v. Ambient Healthcare of Ga., Inc.*, 674 F. App'x 926, 930 (11th Cir. 2017); *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004). And shift assignment changes in particular are very rarely considered sufficiently adverse actions—both because they do not typically rise to the level of materially changing the terms of an employee's employment and because they go to the heart of an employer's decision making. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1244–45 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). An employer has no duty to provide accommodations to people with no disabilities to justify them.[5] *See Jeudy v. Att'y Gen.*, 482 F. App'x 517, 521 (11th Cir. 2012); *Swain v. Hillsborough Cnty. Sch. Bd.*, 146 F.3d 855, 858 (11th Cir. 1998).

---

[5] As the Court previously found, Plaintiff has not shown she was disabled. (Doc. 43, pp. 7–9.) While she insists she had no pregnancy restrictions justifying accommodations, she admits that she requested not to perform the essential functions of her job. (Doc. 50-4, pp. 14:5–8, 16:13–17:4, 20:11–17, 21:21–22:3.) And she admits that she did not provide a light duty note, which was required by her bargaining agreement if she could not do her job. (*See* Doc. 50-4, pp. 37:20–21, 43:6–8, 45:24–46:1, 47:10–13, 48:16–17.) With no disability, Defendant was not required to accommodate her request not to perform certain parts of her job. *See Jeudy*, 482 F. App'x at 521.

By her own admission, Plaintiff did not have any pregnancy restrictions and could do her job. (Doc. 50-4, pp. 37:20–21, 43:6–8, 45:24–46:1, 47:10–13, 48:16–17.) Under these circumstances, no reasonable person could conclude that Defendant's assignment of Plaintiff to a normal duty position—when she insisted she could work normal duty—seriously and materially altered the terms of Plaintiff's employment as a corrections officer. *See Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000). So Plaintiff has not shown that the denial of her request to be assigned to the control room is an adverse employment action. *See Jeudy*, 482 F. App'x at 521.

### 2.     Prima Facie Case – Similarly Situated Comparator

Even if Plaintiff had shown that the denial of her control room request was an adverse action, her prima facie case still fails because she cannot show a similarly situated comparator.

"A plaintiff proceeding under *McDonnell Douglas* must show that she and her comparators are similarly situated in *all material respects*." *Lewis v. City of Union City*, 918 F.3d 1213, 1226 (11th Cir. 2019) (cleaned up) (emphasis added).

The comparator Plaintiff offers for this action is Michael Perkins. (Doc. 51, p. 10.) But Perkins was only tasked to the control room occasionally, not permanently—in line with Defendant's policy. (Doc. 51-2, pp. 17:24–18:10, 19:6–11, 21:17–18; Doc. 52-1, ¶ 6.) And Plaintiff offers no evidence that Perkins sought

to be assigned to the control room long-term with no light duty note, like her. (*See* Doc. 51, p. 10.) So Perkins is not similarly situated in all material respects. *See Lewis*, 918 F.3d at 1226. Without pointing to someone outside of Plaintiff's class who asked to be and was assigned to the control room long-term without a doctor's note, Plaintiff cannot establish she was treated less favorably due to discrimination.

Because Plaintiff has failed to demonstrate that Defendant's denial of her request to be assigned to the control room was an adverse employment action and that a similarly situated comparator was treated better, this portion of Plaintiff's prima facie case fails.

### B.   Termination

The other half of Plaintiff's prima facie case of discrimination concerns Plaintiff's termination, which Defendant does not contest was an adverse employment action. (*See* Doc. 50, p. 17.) But Defendant asserts that Plaintiff's proffered comparator was not similarly situated, so her prima facie case fails. (Doc. 52, pp. 3–4.) Defendant also contends that even if Plaintiff could make out her prima facie case, she fails to establish that Defendant's reason for terminating her was pretextual. (Doc. 50, pp. 18–19.) The Court addresses each argument.

### 1.   Prima Facie Case – Similarly Situated Comparator

Plaintiff offers Mickael Holt as a comparator concerning her termination.

(Doc. 51, p. 10.) But Holt is not similarly situated to Plaintiff in all material respects.

Holt experienced a back injury and was unable to work. (Doc. 52-2.) When Holt's leave expired and he did not return, Defendant "medically dismissed" him "without prejudice" to being rehired. (Doc. 51-9.)

Plaintiff asserts that Defendant treated Holt better than her because he was terminated without prejudice and invited to re-apply, but she was not. (Doc. 51, p. 10.) But Plaintiff fails to acknowledge that she and Holt are dissimilar in one key way: he was injured and unable to work, while she was not. (*Compare* Doc. 50-21, *with* Doc. 52-2.) While both Holt and Plaintiff were terminated when they failed to return to work after reaching the end of their leave,[6] Holt's medical dismissal cannot be fairly compared to Plaintiff's, as she had no medical reason for not returning. (*Compare* Doc. 51-9, *with* Doc. 51-10.)

So the Court cannot fairly determine whether Plaintiff's termination was discrimination as a result of her pregnancy because Plaintiff has not offered a truly similarly situated comparator—a male who was physically able to return to work

---

[6] Plaintiff also asserts that Holt was "granted leave well beyond the five months [Plaintiff] was provided." (Doc. 51, p. 10.) Holt's and Plaintiff's leave requests were different in that Holt requested leave "not to exceed" twelve months, while Plaintiff requested leave for a full additional year beyond the several months she had already used—and the applicable policy prevents leave in excess of a year. (*Compare* Doc. 52-2, *with* Doc. 50-21.) But regardless, Plaintiff did not allege the denial of her leave request as an adverse employment action—only complaining of the termination. (*See* Doc. 36, ¶ 135.) So she cannot assert this new basis for her claim now. *See Davis v. City of Lake City*, No. 3:10-cv-1170, 2013 WL 12091324, at *11 (M.D. Fla. Mar. 15, 2013), *aff'd*, 553 F. App'x 881 (11th Cir. 2014).

but declined and nonetheless received more favorable termination terms. *See Lewis*, 918 F.3d at 1227–29. And the Court cannot conclude that Defendant discriminated against Plaintiff by denying her favorable termination terms when the evidence shows that Defendant actually did offer Plaintiff the option to resign so she could be rehired—and she declined. (Doc. 50-4, pp. 77:14–78:13.)

Because Plaintiff has failed to meet her burden of demonstrating that a similarly situated comparator[7] was treated more favorably than her concerning her termination, she has not established her prima facie case of discrimination.

### 2. Pretext

Even if the Court were to accept Holt as a similarly situated comparator, Plaintiff's claim would still fail at the pretext stage.

Defendant articulated a legitimate, non-discriminatory reason for terminating Plaintiff—she did not show up to work when directed. (Doc. 50-24.) So the burden shifts back to Plaintiff to demonstrate that Defendant's reason "is a mere pretext for unlawful discrimination and was not the true reason for the employment decision." *Davis v. City of Lake City*, No. 3:10-cv-1170, 2013 WL 12091324, at *4 (M.D. Fla. Mar. 15, 2013) (Howard, J.), *aff'd*, 553 F. App'x 881 (11th

---

[7] Plaintiff superficially asserts that she need not present evidence of a similarly situated comparator and may rely instead on a "convincing mosaic of circumstantial evidence" of discrimination to meet her burden. (Doc. 51, p. 8 (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).) But she offers no substantive argument or evidence to demonstrate a convincing mosaic—just falling back on comparators. (*See* Doc. 51, p. 10.) So Plaintiff has failed to meet her burden. *See Burke-Fowler v. Orange Cnty.*, 447 F.3d 1319, 1325 (11th Cir. 2006).

Cir. 2014). This stage requires a "new level of specificity" from Plaintiff, and she must carry the "ultimate burden" of persuading the Court that Defendant intentionally discriminated against her. *See id.* at \*4, \*13.

"If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Bojd v. Golder Assocs., Inc.*, 212 F. App'x 860, 862 (11th Cir. 2006) (cleaned up). "[T]he employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). So simply taking issue with the employer's stated reason for the adverse action is not enough—the plaintiff must show "*both* that the [proffered] reason was false, *and* that discrimination was the real reason." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). "[T]he Court does not sit as a super-personnel department, and it is not the Court's role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Davis*, 2013 WL 12091324, at \*13 (cleaned up).

On a review of the record, the Court cannot conclude that Plaintiff has met her ultimate burden of demonstrating that her termination was an act of discrimination due to her pregnancy. In fact, numerous times throughout her pregnancy, Defendant tried to accommodate Plaintiff's requests, even though she did not have documented restrictions justifying them. (*See generally* Doc. 50-1;

13

Doc. 50-4.) Notably, Plaintiff wanted to be treated the same as with her previous pregnancy in 2011 (*see* Doc. 50-4, pp. 30:23–31:4)—but she fails to acknowledge that the previous version of her collective bargaining agreement did not require her to bring in a light duty note to receive accommodations, while the agreement in effect in 2013 did. (*Compare* Doc. 50-7, p. 18, *with* Doc. 50-8, p. 3.) And the fact that Defendant had no issues with Plaintiff's previous pregnancy undermines her assertion that Defendant's actions were suddenly motivated by discriminatory animus against her during her second pregnancy, rather than a change in circumstances due to the new terms of the bargaining agreement. (*See* Doc. 50-4, p. 31:2–7.)

Indeed, even after Plaintiff filed EEOC charges, Defendant still treated her fairly for the remaining months of her pregnancy; it did not interfere with her taking FMLA leave, allowed her to use donated sick leave, and granted her multiple months of discretionary leave. (Docs. 50-18 to -20.) When it became clear that she would not return, Defendant asked her to resign willingly so she could be eligible for rehire—indicating an intent to try to work with her in the future—but she refused. (Doc. 50-4, pp. 77:14–78:13.)

Plaintiff attempts to fall back on her argument that Holt was treated better than her to show discrimination, but she does not rebut Defendant's argument that she was terminated because she refused to show up to work. (*See* Doc. 51, p. 15.)

In fact, Plaintiff's argument that Defendant discriminated against her by firing her when she did not show up is undercut by the fact that Holt was *also* terminated when he failed to show up (even though the terms of the termination were different because Plaintiff and Holt were differently situated). (*See* Doc. 51-9.)

In sum, Plaintiff's evidence does not lead to the conclusion that Defendant's reason for terminating her (not showing up to work when directed) was false, and Defendant instead terminated her because of discrimination against her pregnancy. So Plaintiff has not carried her burden of establishing pretext. *See Jolley v. Phillips Educ. Grp. of Cent. Fla., Inc.*, No. 95-147, 1996 WL 529202, at *5 (M.D. Fla. July 3, 1996) (Conway, J.) (finding that plaintiff had not shown pretext where her insubordination preceded her termination, and the evidence did not show that her conversation with her supervisor about pregnancy was related to her termination); *Lewis v. Aaron's Sales & Lease Ownership, Inc.*, No. 8:12-cv-1005, 2013 WL 5741780, at *9 (M.D. Fla. Oct. 22, 2013) (Whittemore, J.) (finding that plaintiff had not shown pretext where she merely recast her employer's legitimate reason for firing her and relied on an insufficiently similar comparator, even where her employer made explicitly negative comments about her pregnancy); *see also Davis*, 2013 WL 12091324, at *13–23.

As Plaintiff has not established a prima facie case or pretext, Defendant's Motion is due to be granted on Plaintiff's pregnancy discrimination claim.

## II.    Retaliation

Next, Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because she has not shown that her complaints about her shift assignment in May and her EEOC charges in June were the cause of her termination several months later in December. (Doc. 50, pp. 19–21.) The Court agrees.

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

A plaintiff satisfies this causation element if she can show "a close temporal proximity between [the defendant's] awareness [of her protected activity] and the adverse action." *Higdon*, 393 F.3d at 1220 (cleaned up). Mere temporal proximity in the absence of other evidence showing causation must be "very close" to be

16

sufficient. *See id.* (cleaned up). And a substantial delay—such as more than three months—between the protected activity and the adverse action, without more, is insufficient to meet the plaintiff's burden. *See id.*

Plaintiff asserts in her response brief, for the first time, that she engaged in additional protected activity by sending a letter to Defendant invoking her rights on December 5, 2013, the day before her termination, thus establishing temporal proximity. (Doc. 51, p. 10; *see also* Doc. 51-8.) But Plaintiff failed to mention the December 5 letter in any of the four iterations of her Complaint. (*See* Docs. 1, 6, 19, 36.) And Defendant did not discuss the December 5 letter as a protected activity in its Motion, as Plaintiff had not pled it. (*See* Doc. 50, p. 9.) Because Plaintiff failed to allege this activity as a basis for her retaliation claim, she cannot raise it now. *See Davis v. City of Lake City*, 2013 WL 12091324, at *11 (rejecting new incidence of retaliation raised at summary judgment that was not alleged in the complaint); *see also Williams v. Flagler Humane Soc'y, Inc.*, No. 3:12-cv-767, 2013 WL 12358254, at *8 (M.D. Fla. Dec. 11, 2013); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004).

Without that letter as an established protected activity, there is no sufficiently close temporal proximity between her complaints and EEOC charges more than six months earlier and her termination. *See Higdon*, 393 F.3d at 1220; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). And Plaintiff does not

provide any evidence demonstrating a chain of retaliatory acts for the several months in between to otherwise establish causation. (*See* Doc. 51, p. 11.) Indeed, for months after her complaints, Plaintiff was given FMLA leave when she needed it and more than two months of discretionary leave when she asked for it. (Doc. 50-11, pp. 37–48; Docs. 50-18 to -20; Doc. 50-23.) So without temporal proximity or other evidence of retaliatory acts, Plaintiff has failed to raise a jury issue on causation. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001).

But even if the Court were to consider Plaintiff's December 5 letter as a protected activity, she still could not establish causation. Defendant already told Plaintiff on December 2 and December 4 that she must return to work on December 6 or be fired—but she did not return. (Docs. 50-22, 50-24; Doc. 51-1, ¶ 25.) Causation is not established when an employer contemplates termination before the employee engages in the protected activity. *See Clark*, 532 U.S. at 272. As Plaintiff's letter came after Defendant told her she would be terminated if she did not return, the temporal proximity of the events alone does not establish causation.

As Plaintiff has not demonstrated causation, the Court need not reach the remaining factors because Plaintiff has failed to establish her prima facie case of retaliation.[8] So Defendant's Motion is due to be granted on this claim.

---

[8] Even if Plaintiff established her prima facie case, her retaliation claim would still fail at the pretext stage for the same reasons as the discrimination claim. *See supra*.

### III.    ADA Interference

Finally, Defendant argues that Plaintiff failed to establish her ADA interference claim because she was not disabled under the ADA.[9] (Doc. 50, p. 23.) Without setting forth any evidence of disability, Plaintiff counters she need not be disabled to assert this type of ADA claim. (Doc. 51, p. 16.)

The ADA provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise of enjoyment of . . . any *right granted or protected by this chapter*." 42 U.S.C. § 12203(b) (emphasis added). So a plaintiff must have existing rights under the ADA to bring an interference claim. *See EEOC v. STME, LLC*, 309 F. Supp. 3d 1207, 1216 (M.D. Fla. 2018), *aff'd*, 938 F.3d 1305 (11th Cir. 2019).

But pregnancy is not a disability under the ADA unless it substantially limits a major life activity, and as the Court has already ruled, Plaintiff has not sufficiently pled (nor has she subsequently proven) that she was disabled or otherwise entitled to the protection of the ADA. (*See* Doc. 43, pp. 7–9 (citing *Jeudy*,

---

[9] Defendant argues Plaintiff failed to exhaust her administrative remedies because her EEOC charge did not mention interference. (Doc. 50, pp. 21–23.) But "the scope of an EEOC complaint should not be strictly interpreted." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (cleaned up). Plaintiff's EEOC charge asserts she was denied a reasonable accommodation under the ADA, specifically referencing the facts on which she bases her interference claim. (*Compare* Doc. 36, ¶ 162, *with* Doc. 51-12.) So the claim is sufficiently "like or related to" the allegations in the charge to fulfill this requirement. *See Gregory*, 355 F.3d at 1280.

482 F. App'x at 520; *Selkow v. 7-Eleven, Inc.*, No. 8:11-cv-456, 2012 WL 2054872, at *14 (M.D. Fla. June 7, 2012)) (dismissing other ADA claims).)[10] Without providing any evidence of a disability (*see* Doc. 51, p. 16), Plaintiff has not established she had any rights under the ADA to enforce and cannot prevail on her interference claim. *See STME*, 309 F. Supp. 3d at 1216. So Defendant's Motion is due to be granted as to this claim.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1.     Defendant's Motion (Doc. 50) is **GRANTED**.

2.     The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff on Counts I, II, and V of the Third Amended Complaint. (Doc. 36, ¶¶ 132–48, 168–73.) Plaintiff shall take nothing on her claims.

3.     Once judgment is entered, the Clerk is **DIRECTED** to terminate all pending motions, cancel all upcoming hearings, and close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 2, 2021.

---

[10] Though Defendant moved to dismiss all three ADA claims (Counts III–V) in the Second Amended Complaint, which the Court granted without prejudice, Defendant only moved to dismiss Counts III and IV in the operative Third Amended Complaint, which the Court granted with prejudice—leaving Count V untouched until now. (Docs. 21, 33, 38, 43.)

ROY B. DALTON JR.
United States District Judge